IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

PRATT FEEDERS, INC.,

    Plaintiff,

        vs.

PRATT AIRPORT AUTHORITY,

    Defendant and Third-Party Plaintiff,

                               Case No. 04-1145-JTM

FEDERAL AVIATION
ADMINISTRATION,

    Third-Party Defendant.

MEMORANDUM AND ORDER

This matter is before the court on cross-motions for summary judgment by plaintiff Pratt Feeders, Inc., and by defendant Pratt Airport Authority. The facts are not in dispute.

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the court must examine all evidence in a light most favorable to the opposing party. *McKenzie v. Mercy Hospital*, 854 F.2d 365, 367 (10th Cir. 1988). The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt. *Ellis v. El Paso Natural Gas Co.*, 754 F.2d 884, 885 (10th Cir. 1985). The moving party need not disprove plaintiff's claim; it need only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir. 1987).

In resisting a motion for summary judgment, the opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs.  Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  Once the moving party has carried its burden under Rule 56(c), the party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts.  "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a **genuine issue for trial**.'"  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis in *Matsushita*).  One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

**Findings of Fact**

Pratt Airport Authority currently leases land to Pratt Feeders, which operates a cattle feedlot on the land.  The current lease arises from an original Lease Agreement of May 10, 1961 between the City of Pratt as lessor and Pratt Industrial Development, Inc., as lessee.   Pratt Industrial Development assigned its leasehold interest to Pratt Feedlot, Inc., (Pratt Feeders' predecessor in interest) on April 27, 1978.  Although it has subsequently subleased an interest in the land to Pratt Feeders, L.L.C., the parties agree that plaintiff is the current lessee bound by the terms of the original Lease Agreement dated May 10, 1961.

The Lease had an initial term of fifteen (15) years with renewal options for seven (7) additional ten (10) year terms.

The Lease Agreement contains a covenant in which it is stated that Pratt Feeders as lessee:

> ... will conform to and obey all present and future laws and ordinances, and all rules, regulations, requirements, and orders of all governmental authorities or agencies, including the Federal Aviation Agency, respecting the use and occupation of the demised premises...

2

(Def. Exhibit A. Lease Agreement, at 2.)

The Lease Agreement contains a covenant stating that Pratt Feeders will:

Not use or occupy said leased premises or permit the same to be used or occupied for any purpose or business deemed extra hazardous to adjacent property for airport purposes.

(Id.)

The Lease Agreement contains a mutual covenant stating that:

If the lessee shall at any time be in default in the payment of rent or in the performance of any of the covenants, terms, or conditions of this lease, and the lessee shall fail to remedy such default within 30 days after written notice from the lessor, it shall be lawful for the lessor to enter upon said premises and again have, repossess, and enjoy the same as if this lease had not been made, and thereupon, this lease and everything herein contained on the part of the lessor to be done and performed shall cease...

(Id.)

The lease agreement contains a clause stating:

Lessee acknowledges and agrees that this lease is made subject to all the terms, conditions and limitations contained in the right of entry and deed of conveyance from the War Assets Administration to the City of Pratt, and in the case the United States of America or any of its agencies at any time during the term of the lease, exercise the right contained in said instruments to retake and repossess said Army Airbase, then in that event this lease shall cease and terminate, and lessor shall not be liable to lessee for any sum or sums whatsoever because of such termination, and lessee shall promptly deliver possession of the property held by him to the United States or its agency.

(Id. at 3.)

The deed of conveyance mentioned in the Lease is entitled Quitclaim Deed, granting the land from the War Assets Administrator to the City of Pratt conditioned upon various easements and covenants.  The deed of conveyance contains the following covenant:

By the acceptance of this deed or any rights hereunder, the said party of the second part for itself, its successors and assigns, also assumes the obligations of, covenants to abide by and agrees to, and this transfer is made subject to, the following reservations and restrictions set forth in subparagraphs (1) to (7), inclusive of this paragraph, which shall run with the land...

      (1)     That insofar as it is within its powers, the party of the second part shall adequately clear and protect the aerial approaches to the airport by removing, lowering, relocating, marking or lighting or otherwise

mitigating existing airport hazards and by preventing the establishment
or creation of future airport hazards.

(Def. Exh. 5, at 8).

A portion of the land leased to Feeders in the above described Lease Agreement is now needed to conform with Federal Aviation Administration ("FAA") regulations, under Advisory Circular (AC) 150/5300-13, Change 3, 212.(2)(a).  This FAA regulation concerns an area known as a Runway Protection Zone ("RPZ"), which is being updated as part of an Airport Improvement Program.

Written notice of the requirement that the pens must be moved pursuant to FAA regulations was sent to Feeders by the Airport Authority on October 27, 2003.  William G. Parker, writing on behalf of the Airport Authority, notified Pratt Feeders on that date that the Airport Authority intended to remove Pratt Feeders from certain portions of the property covered by the Lease.  The letter stated that Pratt Feeders was required to move for rehabilitation of the Pratt Airport, a project funded by federal grant money.

On January 19, 2004, the Airport Authority's attorney, Michael K. Johnston, sent a letter to Pratt Feeders' attorney, stating that work to remove Pratt Feeders from a portion of the property covered by the Lease will begin in September or October of 2004.

The Airport Authority, through counsel, has specifically stated that federal funds will be used to rehabilitate and/or renovate the Pratt Municipal Airport, the project that requires Pratt Feeders to be displaced.  The Airport Authority contends that Pratt Feeders is required to remove a portion of its operations from the leased property.

Feeders responded to the Airport Authority's notice that the FAA regulations required the pens to be moved by demanding payment of costs related to removing and relocating based on a theory that they were entitled to such payment under the Federal Uniform Relocation Assistance Act (URA), 42 U.S.C. §4601 et seq.   On March 3, 2004, Pratt Feeders' counsel sent a letter to the Airport Authority's attorney, outlining Pratt Feeders' entitlement to reimbursement for costs related to its forced relocation from the leased property pursuant to the URA.

4

On March 10, 2004, the Airport Authority's attorney responded to this letter, denying that the URA applied to Pratt Feeders' planned relocation by the Airport Authority.  The Airport Authority has refused to pay these expenses, based on the fact that various clauses in the Lease Agreement require as a condition of the lease that Feeders at all times be in compliance with any FAA regulations, that occupation of the space cannot interfere with airport purposes, that upon entering the lease Feeders agreed not to hold the Airport Authority liable for any expenses in such event, and based on the determination of the FAA that the URA did not apply.

Pratt Feeders is not in default in any respect with regard to the Lease.  Moreover, Pratt Feeders has not breached any of the covenants contained within the language of the Lease that would give the Airport Authority cause to unilaterally terminate the Lease.

## Discussion

Pratt Feeders seeks recovery under the URA, which provides relief for persons dislocated through government action.  42 U.S.C. § 4622(a) provides:

> Whenever a program or project to be undertaken by a displacing agency will result in the displacement of any person, the head of the displacing agency shall provide for the payment of the displaced person of – (1) actual reasonable expenses in moving himself, his family, business farm operation, or other personal property; (2) actual direct losses of tangible personal property as a result of moving or discontinuing a business or farm operation, but not to exceed an amount equal to the reasonable expenses that would have been required to relocate such property, as determined by the head of the agency; (3) actual reasonable expenses in searching for a replacement business or farm; and (4) actual reasonable expenses necessary to reestablish a displaced farm, nonprofit organization, or small business at its new site, but not to exceed $10,000.

Pratt Feeders seeks various expenses under 49 C.F.R. §§  29.303(a) and 29.304, coupled with imposing various requirements on the Airport Authority under 42 U.S.C. § 4625(c).

The court finds that plaintiff's motion for partial summary judgment on its URA claim should be denied and the present action dismissed for failure to exhaust its administrative remedies.

49 C.F.R. § § 24.10(b) provides:

(b) Actions which may be appealed. Any aggrieved person may file a written appeal with the Agency in any case in which the person believes that the Agency has failed to properly consider the person's application for assistance under this part. Such

5

assistance may include, but is not limited to, the person's eligibility for, or the amount of, a payment required under §24.106 or §24.107, or a relocation payment required under this part. The Agency shall consider a written appeal regardless of form.

Pratt Feeders suggests that administrative review is not required, since the provision uses the term "may." But this merely indicates that a person seeking relief under the URA may appeal for benefits, or accept the consequences of the agency action without seeking further relief. The better view, the court holds, is that a party in position of the plaintiff seeking relief under the URA must comply with administrative appeal provisions of the Administrative Procedures Act. *Ackerley Communications of Florida v. Henderson*, 881 F.2d 990, 993 (11th Cir.1989) (holding APA was intended as exclusive remedy for alleged violations of the URA); *Nagi v. United States*, 751 F.2d 826, 828-29 (6th Cir.1985) (denial of URA relocation benefits under APA); *Supreme Oil v. Metropolitan Transp. Auth.*, No. 96-5169, 1997 WL 607544 (S.D.N.Y. Oct. 2, 1997); *United States v. 249.12 Acres of Land, More or Less,* 414 F.Supp. 933 (W.D. Okla. 1976).

The court also rejects plaintiff's argument that the local Pratt Airport Authority, rather than the FAA, is the displacing agency to which it must appeal under § 24.10(b). First, plaintiff has provided no evidence that the local agency has any authority to authorize or require the FAA to pay for anything other than repairing the airport's runways. Second, even if this most improbable of interpretations were correct, it also remains true that plaintiff has still failed to exhaust its administrative remedies, since it has not filed a written § 24.10(b) appeal with *either* the FAA or the PAA — whether the relevant agency is the FAA or the PAA — or fund any financial assistance.

Finally, the court rejects plaintiff's arguments that it is excused from seeking administrative review because of exigent circumstances or futility. Plaintiff has demonstrated no likelihood of imminent injury if required to proceed through administrative review. And, while the FAA may have issued an initial opinion that the URA is not implicated, the court further finds no basis for concluding that administrative appeals would necessarily be futile. The mere "possibility of an adverse ruling however is not a basis to by-pass administrative review" of a claim for benefits under the URA. *Consumers Power Co. v. Costle*, 468 F.Supp. 375, 380 (D. Mich. 1979).

The court finds that the present action should be dismissed for the failure of the plaintiff to exhaust its administrative remedies.  In light of this conclusion, the court makes no further holding as to the merits of the issues raised in the summary judgment motions of the parties.

IT IS ACCORDINGLY ORDERED this 3d day of February, 2005, that the plaintiff's Motion for Partial Summary Judgment (Dkt. No. 14) is denied; defendant's Motion for Summary Judgment (Dkt. No. 21) is granted as provided herein, and the present action is hereby dismissed.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE